OPINION OF THE COURT
Rena K. Uviller, J.
Defendant has been indicted for first degree rape. At his arraignment bail was set in the amount of $15,000, bond or cash. *782 Based upon defendant’s prior conviction for drug possession, the arraigning Judge directed that any proposed surety be examined prior to defendant’s release. (CPL 520.30.) Notwithstanding the Judge’s order, defendant was released from custody upon the posting of a bond two weeks later, without the surety having been examined. The bond was issued by the Frontier Insurance Company in the amount of $15,000. The justifying affidavit attached to the bond attested that Moisés Medina posted, in support of the bond, $5,000 cash, which included $3,910 as collateral plus a service charge and premium.
The case was then referred to me for all purposes and the Assistant District Attorney requested that the arraignment Judge’s order directing examination of the surety be honored. A hearing for that purpose was held before me on October 12, 1995. The bond and the justifying affidavit were reviewed and testimony was taken from the indemnitor, Moisés Medina.
Mr. Medina related that he is 20 years old, unemployed and has known the defendant for about three years, since he (Mr. Medina) arrived in New York from the Dominican Republic; that he (Mr. Medina) is very close to defendant’s father who had raised him as a child in the Dominican Republic and that he has known the defendant’s father all his life.
Mr. Medina further related that he obtained the $5,000, which he provided in support of the insurance company bond from an individual by the name of Miguel Duran whose address in New Jersey he could not then provide but that it was obtainable. Nor could Mr. Medina provide any persuasive reason why Mr. Duran lent him the cash.
CONCLUSION
CPL article 500 does not contemplate an automatic examination of the source of bail in every case. However, where the District Attorney has reasonable cause to believe that the person posting cash bail is not in rightful possession of the money or that such money constitutes the fruits of criminal or unlawful conduct, the court may conduct an inquiry into the source of the cash. (CPL 520.30 [1].)
Where bail is posted not as cash but in the form of a bond (other than an insurance company bond), an examination of the obligor is authorized upon the same showing by the District Attorney, as well as to determine the value and sufficiency of any security offered in support of the bond. (Ibid.)
*783 But where, as here, the obligor is an insurance company licensed by the Superintendent of Insurance to engage in the business of executing bail bonds, the inquiry is generally more limited. In such cases, the examination is normally confined to the qualifications of the surety-obligor and its executing agent. (See, CPL 520.30 [1] [a]; Matter of Barnes v Cohen, 45 AD2d 837 [1st Dept 1974].) If a qualified company is willing to write a bond, presumably that company has favorably assessed the risk of defendant’s nonappearance at trial and is willing to guarantee his appearance. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 520.30, at 57 [1984 ed].)
The People have not claimed or demonstrated any irregularity or unreliability on the part of the obligor, Frontier Insurance Company, which posted the $15,000 bond, or by its executing agent. To be sure, the statute provides that the court may examine "[t]he background, character and reputation of any person who has indemnified * * * an obligor upon [a] bond” and "whether any such indemnitor * * * has within a period of one month prior to such indemnity transaction” given similar security in other, unrelated criminal cases. (CPL 520.30 [1] [d].) By the very terms of paragraph (d), it is clear that the Legislature’s concern was to expose and prevent criminal enterprises from using otherwise legitimate obligors as a shield to conceal illicit sources of bail. (See, People v Esquivel, 158 Misc 2d 720.) The evident purpose is to prevent criminal associations from serving as collateral providers for its members.
The fact that Mr. Medina, the indemnitor in this case, has not satisfactorily explained the source of the cash he provided as collateral by no means demonstrates, except by sheer conjecture, that he is part of a criminal enterprise or that the cash is associated with unlawful activity. Significantly, the $5,000 Mr. Medina has posted is only a fraction of the $15,000 bond, thereby refuting the suggestion that the insurance company is being used as a front to conceal illicit cash as the true source of the bail. If the defendant were to flee, not only would Mr. Medina forfeit his $5,000 collateral, but the insurance company would be obliged to forfeit an additional $10,000 to cover the face value of the bond. This is not a case where the defendant’s flight would result solely, or even primarily (if at all), in the loss of criminal proceeds. (Matter of Johnson v Crane, 171 AD2d 537; cf., People v Esquivel, supra.)
The defendant’s single prior conviction for drug possession barely sufficed, in my view, as a reason to undertake the exam *784 ination of surety in the first place, let alone to disapprove the bail. This is especially so in light of the fact that a licensed insurance company is the surety and the collateral posted by the indemnitor, notwithstanding his inability to credibly establish its source, is only a fraction of the face of the bond.
For the foregoing reasons, the bail is approved and continued.