OPINION OF THE COURT
William E. Garnett, J.
Does the “double equity” requirement contained in CPL 500.10 (17) (b) apply to a court’s review of an insurance company bail bond secured by real property?
*747 In this case, the defendant was charged with numerous counts of criminal sale of a firearm in the third degree, a class D felony. (Penal Law § 265.11 [1].) At his arraignment on October 11, 2002, a judge set bail at $500,000 cash or insurance company bond.* The People requested, and were granted, a bail source hearing pursuant to CPL 520.30.
On October 16, 2002, an insurance company posted a bail bond in the amount of $500,000 secured by three pieces of real property valued by the insurance company at $593,000. This valuation was calculated by subtracting mortgages from real estate appraisal values.
A bail source hearing was scheduled for October 17, 2002. In the interim, the defense provided the appraisals and copies of the deeds to the District Attorney. At the hearing on October 17, the District Attorney did not contest the purported equity in the three properties. Moreover, the prosecution did not challenge the source of the security for the bond on any of the grounds specified in CPL 520.30 (1).
The District Attorney did, however, argue that the insurance company bond, secured by real property, must be scrutinized under CPL 500.10 (17) (b) which requires that a “secured bail bond” be secured by real property having a value of, at least, twice the total amount of the undertaking. The defense contended that this section does not apply to an evaluation of real property accepted by an insurance company as collateral for a bail bond. At a sidebar, the defense all but acknowledged that if the formula contained in CPL 500.10 (17) (b) were applicable, the “double equity” requirement could not be met in this case.
Bail Structure
The Criminal Procedure Law permits an arraignment court to select from an array-of bail options. (CPL 520.10 [1].) The court may delimit the options by specifying at least two forms of bail. (CPL 520.10 [2] [b].) If the court simply sets bail at a given amount, the defendant may choose from the full panoply of options listed in CPL 520.10 (1), but may post bail in the least onerous forms, i.e., unsecured surety bond or appearance bond. (CPL 520.10 [2] [a].) Among the options that a court may specify and a defendant may choose is the “insurance company *748 bail bond.” (CPL 520.10 [1] [b].) The statute defines “insurance company bail bond” separately from a “secured bail bond.” (CPL 500.10 [16], [17].) Only a “secured bail bond” is explicitly required to satisfy the “double equity” provision contained in CPL 500.10 (17) (b) if the security for the bond is real property. Thus, the definition of “secured bail bond” subsumes the “double equity” provision while the definition of “insurance company bail bond” does not. The failure of the Legislature to have included the “double equity” requirement within the definition of an “insurance company bail bond” is a strong indication that its exclusion was intended. (People v Finnegan, 85 NY2d 53, 58 [1995]; McKinney’s Cons Laws of NY, Boole 1, Statutes § 74.)
Presumably, a court could provide that bail be in the form of a “secured insurance company bail bond” and thus co-opt the “double equity” provision contained in CPL 500.10 (17) (b) into the definition of an “insurance company bond.” (See, e.g., People v Sherman, 132 Misc 2d 15 [Sup Ct, NY County 1986] [the Appellate Division required that the defendant post a “fully secured surety company bond” for a stay of sentence pending appeal].)
Therefore, when a court customarily sets bail requiring cash or an “insurance company bail bond,” the court is prescribing a bail option which does not inherently include the “double equity” provision of CPL 500.10 (17) (b) if the “insurance company bail bond” is secured by real property. If a court wishes full security for bail other than cash, the court may provide for a “secured bail bond” or require that any insurance company bail bond be fully secured. The statutory bail paradigm does not provide for “double equity” scrutiny when the bail option is merely an “insurance company bail bond.” Once that form of bail is authorized by the court, the insurance company judges the adequacy of the collateral against the risk that it is assuming that the defendant will not appear in the future. Of course, the District Attorney may challenge the source of the collateral for an insurance company bail bond at a hearing authorized by CPL 520.30 but may not attack the amount of the collateral required by the insurance company to secure the bond. (Matter of Johnson v Crane, 171 AD2d 537 [1st Dept 1991]; People v McIntyre, 168 Misc 2d 556, 563 [Sup Ct, Kings County 1996].) The District Attorney may also make inquiry as to whether the collateral real property has been provided as security on other bail bonds. (CPL 520.30.)
*749 Case Law
The sparse case law in this area supports this statutory structure and interpretation. In People v O’Boyle (NYLJ, June 24, 1997, at 30, col 1), the court, without much explication, acknowledged the difference between a “secured bail bond” and an “insurance company bail bond” and rejected the People’s request to contest the value of the real property accepted by the insurance company as collateral. An analysis of the current statute, its predecessors and the case law demonstrates that this deferential approach to the “insurance company bail bond” is correct and that the “double equity” provision has no application to an examination of an “insurance company bail bond” in the absence of other judicial mandates.
The cases which have addressed the constitutionality of the “double equity” provision have not dealt with the “insurance company bail bond.” (People ex rel. Hardy v Sielaff, 79 NY2d 618 [1992]; People v Burton, 150 Misc 2d 214 [Sup Ct, Bronx County 1990], disagreed with by People ex rel. Hardy v Sielaff, supra.) In each case, the court was confronted with “secured bail bonds” — not “insurance bail company bonds.” In People ex rel. Hardy v Sielaff (supra at 620), the Court of Appeals recognized that the origin of the “double equity” provision was rooted in “the abuses of certain commercial bail bondsmen” but acknowledged that the Legislature had subsequently ameliorated the corrupt practices of bondsmen. This success in curtailing abusive practices by bondsmen was accomplished by the adoption of the current Criminal Procedure Law bail scheme in 1970. These new provisions provided for the regulation of bondsmen by the New York State Superintendent of Insurance. (Insurance Law § 6801 et seq.) In this case, the Court of Appeals upheld the constitutionality of the “double equity” provision in the context of the “secured bail bond.” In sustaining the application of this provision, the Court recognized the inability of a reviewing court to “employ the careful appraisal and underwriting techniques of a commercial lender” where a “secured bail bond” is posted. (People ex rel. Hardy v Sielaff, supra at 621.) In contrast, when a licensed insurance company accepts real property as collateral, the expertise of the insurance company is presumably employed to assess the adequacy of the collateral. The decision is not a judicial, but a business, one.
Courts have traditionally accepted an insurance company’s valuation of the collateral for a bail bond. Moreover, the courts have accorded deference to the judgment of insurance compa *750 nies licensed by the New York State Superintendent of Insurance in assessing the adequacy of the underlying security for a bond whether the collateral is cash or real property. (People v O’Boyle, supra; People v McIntyre, supra [inquiry properly limited]; People v Martinez, 166 Misc 2d 781 [Sup Ct, NY County 1995] [inquiry is more limited].) This deference is bottomed on an assumption that “th[e] company has favorably assessed the risk of the defendant’s nonappearance.” (People v Martinez, supra at 783.) In Matter of Barnes v Cohen (45 AD2d 837, 838 [1st Dept 1974]), the Appellate Division limited a court’s inquiry pursuant to CPL 520.30 (1) to the obligor insurance company rather than the “underlying indemnification, except to the extent of public policy.” In Matter of Johnson v Crane (supra), the Appellate Division overruled Barnes to the extent that Barnes had been applied to foreclose inquiry into the source of the indemnification on the grounds specified in CPL 520.30 (1). Thus, it is patently clear that even where an insurance company bail bond is posted, the District Attorney may have inquiry into the source of the collateral on the grounds specified in CPL 520.30 but the value of the collateral is left to the business judgment of the insurance company.
The insurance company’s licensure by the State coupled with the presumption that the company will apply proper commercial risk assessment warrants the court’s acceptance of the insurance company’s decision on the value and sufficiency of the underlying collateral.
The prosecution has cited People v Sherman (supra) for the proposition that the “double equity” provision of CPL 500.10 (17) (b) applies to the evaluation of an insurance company bail bond secured by real property. However, first, this case is not binding authority and second, the facts of this case are distinguishable. In Sherman, the Appellate Division, on remand, had required a “fully secured surety company bond.” The phrase “fully secured,” at least arguably, brought this bail instrument within the strictures of CPL 500.10 (17), which requires that a secured bail bond is subject to the “double equity” provision of CPL 500.10 (17) (b) when the bond is secured by real property. This significant fact distinguishes the Sherman case from this case as the arraignment court here did not specify how the insurance company bond was to be secured.
Statutory History
The conclusion that a court may not inquire into the value of the underlying collateral for an insurance company bond and *751 that the “double equity” provision of CPL 500.10 (17) (b) does not apply to an insurance company bail bond is buttressed by an examination of the bail provisions contained in the old Code of Criminal Procedure and the present Criminal Procedure Law.
The bail provisions in this state have evolved from the relatively rudimentary provisions in the Code of Criminal Procedure to the more complex provisions of the CPL. A portion of this evolution demonstrates that the “double equity” provision created to obviate the abuses of bail bondsmen has no application to an “insurance company bail bond” posted under the CPL.
In 1936, section 569 (1) of the Code of Criminal Procedure defined a surety as merely a resident of the state unless the magistrate required the surety to reside in the county. Section 569 (3) permitted a surety to pledge real property in lieu of cash. The real property was required to have an “assessed value” less any liens equal to the amount of the bail.
In 1942, the Code of Criminal Procedure was amended and provided in section 569 (1) that any surety “must not appear upon any official list of undesirable bondsmen.” Subdivision (3) of the same statute was amended to introduce the “double equity” requirement for real property as security. The statute also specified that the property itself “must not appear upon any official list of undesirable properties.”
These amendments were prompted by a grand jury report issued by a Kings County Grand Jury which had investigated abusive practices by bondsmen. (See mem from John Amen, Assistant Attorney General in charge of Kings County investigation addressed to Governor Herbert H. Lehman, dated Apr. 23, 1942.) The amendment concerning the bondsmen lists was enacted to give the force of law to informal lists of undesirable bondsmen which had been maintained by the Magistrate’s Court. (See letter from Chief Magistrate Henry Curran to Governor Herbert H. Lehman, dated Apr. 27, 1942.)
In 1965, Code of Criminal Procedure § 569 (3) was further amended to provide for the formula which sets the property’s value by dividing the last assessed value by the tax equalization rate. As a result of the 1942 “double equity” amendment, real property was “rarely” offered as security for bail as the assessed values of property for tax purposes were so low. To rectify this situation, the valuation formula was created to establish more realistic property values. (Legis Bull No. 42, Assn of Bar of City of NY, Comm on Grim Cts [1965].)
*752 The “double equity” provision was required to standardize bail practices regarding real property and to address problems relating to heavily encumbered real property offered as security for bail. (See Amen mem, supra, and letter from NY County Lawyers’ Assn, Comm on Grim Cts by [future mayor] Vincent R. Impellitteri, dated Mar. 16, 1942, which opposed the “double equity” provision.)
In 1970, the Code of Criminal Procedure was replaced by the CPL which in section 500.10 (16) provided for “insurance company bail bonds,” separate and distinct from “secured bail bonds,” proffered by companies licensed by the Superintendent of Insurance. The “double equity” provision was retained only in the subdivision which defined a “secured bail bond.” (CPL 500.10 [17] [b].) Thus, the new CPL created a new bail instrument independent of all others. (CPL 500.10 [16].)
Conclusion
While the amendments, including the “double equity” requirement in the Code of Criminal Procedure, had their genesis in the abuses of bail bondsmen, the continuation of the “double equity” provision in the CPL as part of the definition of a “secured bail bond” has more to do with the vagaries of the real estate market and less to do with providing a mechanism for controlling the abusive practices of bondsmen. (People ex rel. Hardy v Sielaff, supra at 620-621.) The CPL relegated the underfinanced and casual surety bondsman to virtual extinction by subjecting the professional bail bondsman to State regulation and control.
Under the Code of Criminal Procedure, a bondsman was not required to show sufficient resources to cover the face amounts of the bail bonds that he had written. Upon a defendant’s failure to appear, the State was left to foreclose on the real property.
The approbation of the State through the licensing by the Superintendent of Insurance is predicated on the adequacy of an insurance company’s financial resources to cover the face amounts of its bonds. (Insurance Law §§ 6801, 1102.) Thus, in the event of a forfeiture, the State recovers against the company rather than the owners of the real estate.
By these regulations, the insurance company receives the imprimatur of the State and is concomitantly relieved of the onerous collateral requirements previously imposed on them by the Code of Criminal Procedure. The new statute qualifies bail companies while the old statute merely excluded unscrupu *753 lous bondsmen. A bona fide insurance company is permitted, subject to any limitation by the court as to the form of the bail, to only satisfy itself as to the value and sufficiency of the collateral.
Therefore, when a court sets a bail amount with an insurance company bond alternative, the court is without authority to question the value of the collateral pledged by the indemnitor. Consequently, the “double equity” provision contained in CPL 500.10 (17) (b) is not applicable to an insurance company bail bond secured by real property. If a court concludes that a fully secured bond is necessary to ensure the defendant’s future appearance, then its bail determination should reflect that conclusion. An arraignment court is not compelled to allow an insurance company bail bond as an acceptable form of bail.
While the court and the District Attorney may not question the value accepted as collateral by the insurance company, CPL 520.30 permits an inquiry into the source of the collateral provided by the indemnitors. (CPL 520.30 [1] [c], [d].) The bond security may be contested on any of the bases listed in CPL 520.30 (1).
In this case, the District Attorney has made no argument that the source of the collateral is in contravention of any of the provisions of CPL 520.30 (1). Otherwise, the bail bond on its face is in conformity with the law. In light of the foregoing analysis which demonstrates this court’s circumscribed review of an insurance company bail bond, the bond in this case is approved.

 The defendant was also required to surrender his passport and establish his United States citizenship as conditions of bail. These requirements were satisfied by the defendant.